IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TAMIRA L. CALLENDER and TREY R. CALLENDER,<br><br>             Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF THE PROSECUTING ATTORNEY FOR THE COUNTY OF MAUI; MAUI POLICE DEPARTMENT; EMLYN H. HIGA, individually and in his official capacity; NICOLAI K.H. ARIGA, individually and in his official capacity; JOHN KALAMA, individually and in his official capacity; WENDELL H. LOO, individually and in his official capacity; DOE DEFENDANTS 1–10; DOE PARTNERSHIPS 1–10; and DOE CORPORATIONS 1–10,<br><br>             Defendants. | CIVIL NO. 20-00321 JAO-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART (1) COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FILED OCTOBER 12, 2020; AND (2) EMLYN H. HIGA'S, INDIVIDUALLY, MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

**ORDER GRANTING IN PART AND DENYING IN PART (1) COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FILED OCTOBER 12, 2020; AND (2) EMLYN H. HIGA'S, INDIVIDUALLY, MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs Tamira L. Callender ("Tamira") and Trey R. Callender ("Trey") (collectively, "Plaintiffs") brought this lawsuit asserting civil rights and state law violations against various officials and departments of the County of Maui after a deputy prosecuting attorney allegedly assaulted Trey in Plaintiffs' home.  All of

the defendants moved to dismiss Plaintiffs' First Amended Complaint ("FAC").
*See* ECF Nos. 46, 48 (collectively, "Motions").  For the following reasons, the
defendants' Motions are GRANTED IN PART AND DENIED IN PART.

## I.     BACKGROUND

### A.    Facts[1]

Tamira was a victim of domestic abuse and had two domestic violence cases
in 2009 assigned to Defendant Emlyn H. Higa ("Higa"), who was employed as a
Deputy Prosecuting Attorney for Defendant Department of the Prosecuting
Attorney for the County of Maui ("DPA").  ECF No. 32 ¶¶ 15, 21.  Higa told
Tamira to call him and not Defendant Maui Police Department ("MPD") if she was
in trouble because MPD is "corrupt."  *Id.* ¶ 21.  Higa further provoked Tamira into
filing an appeal in a civil case by stating she was "chicken shit" if she did not fight

---

[1]  These facts are based on the allegations in the First Amended Complaint, ECF
No. 32 ("FAC"), which are taken as true for purposes of the pending Motions.  The
Court does not consider the declarations Plaintiffs attached to their opposition
briefs to the Motions, as the Court's review on a Rule 12(b)(6) motion to dismiss is
limited to the pleadings.  *See Irvin v. Yates*, No. 1:10-cv-01940-DAD-SAB (PC),
2016 WL 471937, at *2 (E.D. Cal. Feb. 8, 2016) (recommending that the
defendants' motion to strike the plaintiff's declarations attached to his opposition
to a motion to dismiss be granted as "the declarations are irrelevant and improper
because they are outside the scope of the pleadings and constitute extrinsic
evidence" (citing *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir.
2003))), *findings & recommendation adopted*, No. 1:10-cv-01940-DAD-SAB
(PC), 2016 WL 1394330 (E.D. Cal. Apr. 8, 2016).  The Court further notes that
Tamira's declaration appears to include two versions of the same page, one of
which contains her signature and the other of which contains additional,
incomplete allegations.  ECF No. 52-1 at 5–6; ECF No. 53-1 at 5–6.

her case, and misled her by informing her the appeal would only require the filing of one document. *Id.* ¶ 22. The appeal caused Tamira to become legally dependent on Higa because Higa ghost-wrote the majority of her appellate motions. *Id.*

On December 5, 2016, Tamira had a disagreement with her son, Trey, regarding Trey moving out of her house. *Id.* ¶ 23. Tamira invited Higa to their home to talk to Trey, hoping he would act as a mediator. *Id.* Higa arrived at Plaintiffs' home at approximately 2:45 a.m. that morning. *Id.* ¶ 24.

When Higa arrived, Trey was on his laptop while sitting on the living room floor. *Id.* ¶ 25. Higa became verbally aggressive toward Trey, then "soccer-kicked" him on the right side of his head, causing Trey to fall backward and see "darkness and stars." *Id.* ¶¶ 25–26. Higa punched Trey twice in the torso area and held Trey in a chokehold. *Id.* ¶ 26. Tamira yelled at Higa to stop and Tamira's other son helped pull Higa off of Trey. *Id.* ¶¶ 26–27. Higa then left the house and waited either in the backyard or somewhere around the house. *Id.* ¶ 27.

Defendants MPD Officers Nicolai K.H. Ariga ("Ariga"), John Kalama ("Kalama"), and Wendell H. Loo ("Loo") arrived at Plaintiffs' residence around 3:00 a.m. *Id.* ¶ 28. Loo was the supervising officer at the scene. *Id.* Ariga took Higa's statement around 4:45 a.m., and Higa admitted that he kicked and punched Trey, and that Tamira and her other son had to pull him off of Trey. *Id.* ¶ 30.

3

In his statement to MPD, Trey stated that he wanted to pursue prosecution against Higa, but Loo informed Trey that "there would be repercussions to him if he pursued a criminal case against . . . Higa." *Id.* ¶ 31.  Tamira overheard Loo tell Higa that Ariga and Kalama would report that Trey assaulted Higa first. *Id.* ¶ 32. Loo also "threatened to arrest [Trey] if he decided to file criminal charges against . . . Higa."[2]  *Id.* ¶ 75.

Higa informed Tamira that the MPA Acting Prosecuting Attorney knew about the assault and that nothing would happen to Higa.  *Id.* ¶ 33.  Higa convinced Tamira that she could lose her home in the appellate case, which caused Tamira to become further dependent on Higa because he was assisting her with the case.  *Id.* ¶ 34.  Higa further offered for Tamira to live with him if she lost her home.  *Id.*[3]

After the assault, Higa continued to abuse his power.  On May 3, 2018, Higa convinced airport police not to file criminal charges against Tamira's other son when he was stopped by airport police for possession of marijuana.  *Id.* ¶ 35.

On February 20, 2019, Higa accompanied Tamira to the Maui Department of Human Services to apply for Supplemental Nutrition Assistance Program (SNAP)

---

[2]  It is unclear from the face of the FAC when exactly this incident occurred as Plaintiffs neglected to include this allegation in the "Factual Allegations" section of the FAC.

[3]  Plaintiffs did not allege when Higa made any of the statements described in this paragraph.

benefits, waiting with her for approximately three hours while he was supposed to be at work.  *Id.* ¶ 36.

Around March or April of 2019, Tamira was smoking marijuana in Higa's car with Higa present.  *Id.* ¶ 37.  MPD officers approached the vehicle and immediately told Higa, "oh it's you, sorry," and then shook his hand and left.  *Id.* Tamira believes Higa intentionally set up this encounter to intimidate her.  *Id.*

Between June 15, 2019 to September 29, 2019, Higa bribed Tamira to keep silent about the assault, sending her payments between $10 and $200 over the Venmo App for a total of $890.  *Id.* ¶ 38.

On September 27, 2019, Higa bragged to Tamira via telephone that he "only received one day of unpaid leave for assaulting Attorney Myles S. Breiner."  *Id.* ¶ 39.

The various demonstrations of Higa "abusing his power . . . was designed to threaten and intimidate [Plaintiffs] from pressing charges against . . . Higa for the assault."  *Id.* ¶ 40.  Tamira's dependency on Higa for her appellate case allowed him to further manipulate her against filing criminal charges.  *Id.* ¶ 41.

The Honolulu Star Advertiser reported that MPD stated on October 15, 2019 that it forwarded the case (presumably Higa's alleged assault on Trey) to DPA, but that DPA denied ever receiving the report of the incident.  *Id.* ¶ 42.

**B.      Procedural History**

Plaintiffs commenced this action on July 20, 2020 by filing their Complaint. ECF No. 1.  On October 12, 2020, Plaintiffs filed their FAC, asserting the following claims[4]:  Count I – 42 U.S.C. § 1983 (Color of Law) (against all defendants); Count II – Negligent Training/Supervision (against DPA and MPD); Count III – Assault and Battery (against Higa); Count IV – Excessive Force (against Higa); Count V – Abuse of Authority (against Higa, Ariga, Kalama, and Loo); Count VI – Witness Intimidation (against Higa, Ariga, Kalama, and Loo); Count VII – Honest Services Fraud (against Loo); Count VIII – Negligence (against all defendants); Count IX – Gross Negligence (against all defendants); Count X – Intentional Infliction of Emotional Distress (against all defendants); and Count XI – Negligent Infliction of Emotional Distress (against all defendants). ECF No. 32 at 11–20.  Plaintiffs pray for monetary damages; attorneys' fees and costs of suit; and that any judgment be assessed jointly and severally to the extent allowed by law.  *Id.* at 20.

On October 22, 2020, DPA, MPD, Higa, in his official capacity, Ariga, individually and in her official capacity,[5] Kalama, individually and in his official

---

[4]  Plaintiffs did not specify whether the claims against the individual defendants are asserted against each in his or her individual or official capacity, or both.

[5]  This nomenclature reflects that used by the County Defendants in their Motion to Dismiss, as compared to that used by Plaintiffs in the FAC.

6

capacity, and Loo, individually and in his official capacity (collectively, the "County Defendants") filed their Motion to Dismiss Plaintiffs' FAC.  ECF No. 46.

On October 26, 2020, Higa, individually, filed his Motion to Dismiss Plaintiffs' FAC.  ECF No. 48.

On November 12, 2020, the County Defendants filed a Statement of No Opposition with respect to Higa's Motion.  ECF No. 50.

On November 13, 2020, Plaintiffs filed their respective Memoranda in Opposition to the County Defendants' and Higa's Motions.  ECF Nos. 52–53.

On November 20, 2020, the County Defendants and Higa filed their respective Replies in support of their Motions.  ECF Nos. 54–55.

On December 18, 2020, the Court held a hearing regarding the Defendants' Motions.  ECF No. 56.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in

original).  If dismissal is ordered, the plaintiff should be granted leave to amend

unless it is clear that the claims could not be saved by amendment.  *See Swartz v.*

*KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

"A statute-of-limitations defense, if 'apparent from the face of the

complaint,' may properly be raised in a motion to dismiss."  *Seven Arts Filmed*

*Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation

omitted); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013)

("When an affirmative defense is obvious on the face of a complaint, . . . a

defendant can raise that defense in a motion to dismiss." (citation omitted)).

"[U]nless it appears beyond doubt that the plaintiff can prove no set of facts that

would establish the timeliness of the claim," however, a court cannot dismiss a

complaint.  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir.

1995) (citation omitted).

## III.   DISCUSSION

The parties agree that Count I (Plaintiffs' 42 U.S.C. § 1983 claim) is the sole

basis for federal jurisdiction in this action and that if Count I were dismissed, the

Court would not have jurisdiction over Counts II through XI, each of which are

state law claims.  ECF No. 46 at 3; ECF No. 48 at 2.  The parties further agree that

if Higa, individually, and the County Defendants (collectively, "Defendants")

prevail on the statute of limitations defense, all other issues will be moot.[6]  The Court therefore begins its analysis with Defendants' statute of limitations defense to Plaintiffs' Section 1983 claims.

### A.    Applicable Statute of Limitations for Section 1983 Actions

The parties disagree on the applicable statute of limitations for Section 1983 claims:  Plaintiffs argue that the statute of limitation is six years, while Defendants maintain that it is two years.  Defendants are correct.

"Section 1983 does not contain its own statute of limitations.  Without a federal limitations period, the federal courts 'apply the forum state's statute of limitations for personal injury actions[.]'"  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (quoting *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007)) (other citations omitted).  And under Hawai'i law, the statute of limitations for personal injury actions, which applies to Section 1983 actions, is two years.  Hawai'i Revised Statutes ("HRS") § 657-7; *see Pele Def. Fund v. Paty*, 73 Haw. 578, 595, 837 P.2d 1247, 1259 (1992) (holding that the limitations period in HRS § 657-7 applies to Section 1983 actions).  Accordingly, the statute of limitations for Plaintiffs' Section 1983 claims is two years.

---

[6]  The Court commends the parties for their effective and good-faith use of the LR 7.8 conference.

**B.     Plaintiffs' Section 1983 Claims Are Time-Barred**

To prevail on their Section 1983 claims, Plaintiffs must prove two essential elements:  "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citation omitted).  Further, to "determine the timeliness of these claims, [the Court] must determine whether [Plaintiffs] have alleged 'discrete acts' that would violate the Constitution that occurred within the limitations period."  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (citations omitted).  As Plaintiffs commenced this action on July 20, 2020, the Court must assess whether Plaintiffs pled that any such "discrete acts" took place on or after July 20, 2018.

The only acts that took place on or after July 20, 2018 are as follows:

- Higa accompanied Tamira to the Maui Department of Human Services so she could apply for SNAP benefits.  ECF No. 32 ¶ 36.

- MPD officers approached Higa's vehicle in which Tamira was smoking marijuana with Higa present, and, upon seeing Higa, said "oh it's you, sorry," shook Higa's hand, and left.  *Id.* ¶ 37.

- Higa bribed Tamira not to report the assault incident by sending her money on the Venmo App.  *Id.* ¶ 38.

- Higa bragged to Tamira that he only received one day of unpaid leave for assaulting Mr. Breiner. *Id.* ¶ 39.

First, it is clear that none of these acts could possibly involve a violation of Trey's constitutional rights because each of these incidents involve only Tamira, and not Trey. Thus, Trey has failed to plead any Section 1983 violation that occurred within the limitations period.

While Plaintiffs allege that "Higa, Ariga, Kalama, and Loo violated [Trey]'s rights under the Fourth, Fifth, and Fourteenth Amendments," ECF No. 32 ¶ 49, the FAC is silent as to which constitutional right of Tamira's was violated. In their Opposition to Higa's Motion, Plaintiffs argue that Tamira "has been deprived of her fundamental constitutional right to be free from abuse and intimidation and use appropriate proceedings and appropriate legal representation and use the courts within the parameters of the fundamental fairness as guaranteed by the Constitution," and cite *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). ECF No. 52 at 25–26.

In *Hufford*, a firefighter alleged that he was terminated in retaliation for reporting his discovery of a large cache of pornography on a fire station computer in violation of his First Amendment, procedural due process, and substantive due process rights. *See Hufford*, 249 F.3d at 1146–48. With respect to the First Amendment claim, the Ninth Circuit affirmed the district court's denial of the

defendants' motion for summary judgment based on qualified immunity, but reversed the district court's denial of summary judgment on the substantive due process claim. *Id.* at 1150–51 (explaining that because the firefighter's Section 1983 claim was explicitly covered by the First Amendment, that the Fourteenth Amendment's guarantee of substantive due process rights should not guide an analysis of his claim). The Court is at a loss as to how *Hufford*—a case about whistleblower protections for public employees—supports Plaintiffs' argument that Tamira's constitutional rights were violated.

Reading the FAC in the light most favorable to Plaintiffs, the Court understands Tamira's Section 1983 claim (based on incidents that occurred within the limitations period) as the following: Higa intimidated Tamira into not pressing charges against him relating to his assault on Trey by helping her apply for government benefits; helping her evade criminal prosecution for marijuana possession; bribing her; and bragging about his light punishment for assaulting an attorney. Even assuming that Higa was acting under color of State law, Tamira has nonetheless failed to establish a "discrete act" that violated the Constitution within the limitations period because a private citizen has no constitutional right related to the criminal prosecution of another citizen. *See Adnan v. Santa Clara Cnty. Dep't of Corr.*, No. C 02-3451 CW (PR), 2002 WL 32069635, at *3 (N.D. Cal. Sept. 17, 2002) ("A private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another." (brackets omitted) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))).

Neither Trey nor Tamira have pled a Section 1983 violation that occurred within the limitations period.  Plaintiffs' Section 1983 claims are therefore time-barred unless an exception to the statute of limitations applies.

### 1.      Continuing Violations Doctrine

Plaintiffs argue that even if the two-year statute of limitation applies and no actionable violation occurred within the limitations period, the statute of limitations does not bar their claims due to the continuing violations doctrine.  ECF No. 52 at 11–14; ECF No. 53 at 20–22.  At the motions hearing, however, Plaintiffs' counsel conceded that the Ninth Circuit's holding in *Bird v. Hawai'i*, 935 F.3d 738 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 899 (2020), precludes the tolling of the statute of limitations here pursuant to the continuing violations doctrine.  In *Bird*, the Ninth Circuit explained that the "serial acts branch" of the doctrine (which relates to "a series of acts directed against a single plaintiff") applies only to hostile work environment claims, and that the "systematic branch" of the doctrine (which relates to "acts . . . conducted pursuant to a policy or practice") applies only to "class-wide pattern-or-practice claims."  *Bird*, 935 F.3d at 746–48.  Plaintiffs' claims are obviously neither hostile work environment

claims nor class-wide pattern-or-practice claims.  The continuing violations

doctrine therefore cannot revive Plaintiffs' time-barred Section 1983 claims.

### 2.  Equitable Tolling

Plaintiffs argue that even if their Section 1983 claims are otherwise time-

barred, the doctrine of equitable tolling prevents Defendants from raising the

statute of limitations defense.  ECF Nos. 52 at 14–17; ECF No. 53 at 15–18.

Specifically, Plaintiffs argue:  "Following the assault, Higa used his authority and

power to skillfully manipulate Plaintiffs out of pressing charges against him."  ECF

No. 52 at 8.

A federal court "borrows the state's equitable tolling rules" when an

analogous state law statute of limitation applies, "absent a reason not to do

so."  *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th

Cir. 2001).  Hawaiʻi law on the issue of equitable tolling appears to be dependent

on the circumstances of the case.  For example, in a breach of settlement and

breach of trust case brought by the Office of Hawaiian Affairs against the State, the

Hawaiʻi Supreme Court recognized that "[t]he application of equitable tolling in

this jurisdiction has been, for the most part, in the insurance context," but also

observed with approval how federal courts approach the issue:

> In order to toll a statute of limitations for a complaint filed after
> its expiration, a plaintiff must demonstrate "(1) that he ... has
> been pursuing his right diligently, and (2) that some
> extraordinary circumstance stood in his way."  Extraordinary

circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations.

*Office of Hawaiian Affs. v. State*, 110 Hawaiʻi 338, 360, 133 P.3d 767, 789 (2006) (ellipsis in original) (quoting *Felter v. Norton*, 412 F. Supp. 2d 118, 126 (D.D.C. 2006)).  And in *Vidinha v. Miyaki*, 112 Hawaiʻi 336, 145 P.3d 879 (App. 2006), *aff'd*, No. 26188, 114 Hawaiʻi 262 (table), 160 P.3d 738 (table), 2007 WL 1957196 (Haw. June 26, 2007) (SDO), which concerned payments made by a doctor to a patient following a problematic procedure, the court focused on well-settled tenets that "a defendant cannot avail her or himself of the bar of the statute of limitations, if it appears that he or she has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him or her," and that "[o]ne invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." *Vidinha*, 112 Hawaiʻi at 342, 145 P.3d at 885 (internal quotation marks, brackets, and citations omitted).  Plaintiffs' allegations in the FAC are deficient when examined against all of these standards.

As referred to in *Office of Hawaiian Affairs*, "[e]quitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant

16

has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'"  *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).  The scenario here is not one in which Plaintiffs filed a defective complaint within the limitations period, and Plaintiffs have not argued that they diligently pursued their rights.  *See* ECF No. 52 at 14–17; ECF No. 53 at 15–18.   Further, even if Plaintiffs could demonstrate diligence, Plaintiffs have failed to plead the existence of some "extraordinary circumstance" that made it "impossible to file a complaint within the statute of limitations."  *Office of Hawaiian Affs.*, 110 Hawai'i at 360, 133 P.3d at 789 (internal quotation marks and citation omitted).

To be clear, an examination of the FAC reveals that in addition to the other incidents that occurred on the day of the assault, the only other incident that happened within the two-year limitations period was the May 3, 2018 event where Higa convinced airport police not to file possession charges against Tamira's other son.[7]  ECF No. 32 ¶ 35.  The Court is not persuaded by Plaintiffs' argument that

---

[7]  There are also several undated incidents in the FAC, including:

- Higa informed Tamira that the Acting Prosecuting Attorney knew about the assault and that nothing would happen to Higa.  ECF No. 32 ¶ 33.
- Higa convinced Tamira that she could lose her home in her appellate case, which caused Tamira to become further legally dependent on Higa, and Higa's offer to Tamira that she could live with him if she lost her home.  *Id.* ¶ 34.

However, the Court does not consider them in this discussion because there is no basis for the Court to construe that they occurred within the limitations period.

the foregoing incidents are sufficient to toll the statute of limitations "because Defendants' continuing intimidation made it impossible for Plaintiffs to file within the statute of limitations."  ECF No. 52 at 17 (citation omitted).  Reading the FAC in the light most favorable to Plaintiffs, the Court cannot accept that it was "impossible" for Plaintiffs to file a complaint within the limitations period because Higa was providing various forms of assistance to Tamira and her family.  Even if Tamira had a subjective belief that it was not in her interest to file a lawsuit because it would cause Higa to cease assisting her, this is not the type of "extraordinary circumstance" that makes it "impossible" to file a lawsuit.

As to whether Defendants "lulled" Plaintiffs into filing their complaint outside the statute of limitations, Plaintiffs cite two cases in support of their argument that there is a question of fact on this issue.  ECF No. 53 at 18 (citing *Mauian Hotel, Inc. v. Maui Pineapple Co.*, 52 Haw. 563, 481 P.2d 310 (1971); *Vidinha*, 112 Hawaiʻi 336, 145 P.3d 879).  Both cases are readily distinguishable as each involved a circumstance in which the defendant took actions *within the limitations period* that appeared to have lulled the plaintiff to delay filing a complaint until after the statute of limitations had expired, while Higa's payments, other assistance, or further demonstrations of "intimidation" occurred *outside* of the limitations period.  *See Mauian Hotel, Inc.*, 52 Haw. at 571, 481 P.2d at 315 (concluding that a third-party defendant who entered into a court-approved

stipulation with an insurance carrier, which permitted the insurance carrier to amend its answer to include a claim against the third-party defendant, was estopped from asserting the statute of limitations as a defense); *Vidinha*, 112 Hawai'i at 343, 145 P.3d at 886 (holding that the trial court erred in granting summary judgment to two married doctors, one of whom promised to provide financial assistance to a medical malpractice plaintiff and then ceased making payments after the statute of limitations had run, where the plaintiff represented that she relied on the doctor's payments in deciding not to pursue her claim).

And, even when considering Defendants' behavior and statements both during and outside the limitations period that might have demonstrated Higa's "influence," Plaintiffs fail to allege they indeed relied on them to their detriment, and that any reliance on them and resulting delay in the filing of their claims was reasonable. *See Vidinha*, 112 Hawai'i at 342, 145 P.3d at 885; *Mauian Hotel, Inc.*, 52 Haw. at 570–71, 481 P.2d at 315.

Plaintiffs have therefore failed to show that equitable tolling applies to their Section 1983 claims.

## C.   Leave to Amend

The Court must grant Plaintiffs leave to amend their Section 1983 claims unless amendment would be futile. *See Swartz*, 476 F.3d at 760. At the hearing, Plaintiffs' counsel represented that there are many other facts that support

Plaintiffs' equitable tolling argument, but did not have any such facts at her disposal.  Notably, Plaintiffs were unable to revive their time-barred claims despite (1) amending their Complaint after Defendants each moved to dismiss the original Complaint; and (2) alleging additional facts by improperly attaching declarations to their Oppositions to the Motions (even if the Court were to consider the declarations for purposes of the Motions).  *See* ECF Nos. 1, 27, 29, 32, 52-1, 52-2, 53-1, 53-2.  Nevertheless, because there is some possibility that amendment could cure the defects, Plaintiff may file a motion to amend the FAC.  As Plaintiff has already amended the pleadings and it remains unclear whether amendment can cure the defects, the Court will not authorize Plaintiff to file an amended pleading without first obtaining leave of court.

**D.     Plaintiffs' State Law Claims**

The remainder of Plaintiffs' claims are state law claims (Counts II through IX), and the parties have agreed that if Count One was dismissed on statute of limitations grounds, all other claims would be moot.  *See* ECF No. 48 at 3.  At this point, Plaintiffs have failed to state a viable Section 1983 claim, but there is a possibility that Plaintiffs will obtain leave of court to file an amended pleading that states a viable Section 1983 claim.  In the interest of judicial economy, the Court will not consider Defendants' arguments relating to Plaintiffs' state law claims (or the merits of Plaintiffs' Section 1983 claims) unless and until Plaintiffs have

satisfied the threshold issue in this case of asserting a federal claim that is not barred by the statute of limitations.

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART (1) the County Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Filed October 12, 2020 and (2) Emlyn H. Higa's, Individually, Motion to Dismiss First Amended Complaint.  Count 1 of the FAC is DISMISSED WITHOUT PREJUDICE.  Plaintiffs have until March 1, 2021 to file a motion to file an amended complaint.  Plaintiffs may not join any new claims or parties without obtaining leave of court.  Failure to comply may result in dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 28, 2021.



Jill A. Otake
United States District Judge

Civil No. 20-00321-JAO-KJM, *Tamira L. Callender, et al. v. Department of the Prosecuting Attorney for the County of Maui, et al.*; ORDER GRANTING IN PART AND DENYING IN PART (1) COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FILED OCTOBER 12, 2020; AND (2) EMLYN H. HIGA'S, INDIVIDUALLY, MOTION TO DISMISS FIRST AMENDED COMPLAINT